OPINION
Defendant-appellant Bernal Ilac appeals from his classification as a sexual predator, pursuant to R.C. 2950.09, following his plea of guilty to five counts of the Use of a Minor in Nudity-Oriented Material. Ilac contends that the statute establishing sexual predator classification, R.C. 2950.09, is unduly vague, violating the Ohio and United States constitutions. He further contends that his classification is against the manifest weight of the evidence.
Although R.C. 2950.09 requires a trial court to make a difficult determination — whether a sexual offender is likely to re-offend — we conclude that the definition of a sexual predator, who is subject to the most stringent registration and reporting requirements of the statute, is not unconstitutionally vague. Furthermore, upon review of the testimony, documents and videotapes upon which the trial court relied in determining Ilac to be a sexual predator, we conclude that that determination is not against the manifest weight of the evidence. Accordingly, the judgment of the trial court is Affirmed.
 I
Ilac, in his mid forties, made the acquaintance of Barbara Peeden, a recently widowed mother of four children. Amber Peeden, the oldest child, agreed to babysit for Ilac in December, 1996, when she was fourteen years old. Ilac had an infant daughter, under two years old, whom he was raising. Although Ilac had been married twice, his infant daughter was born out of wedlock, and had been put up for adoption by her mother, when Ilac agreed to take custody.
Although Amber Peeden was supposedly hired to babysit, it appears that she never did any babysitting. From December, 1996, until shortly before Ilac's arrest in January, 1998, a period of a little over a year, Peeden was a visitor in Ilac's home virtually every weekend. Ilac told Peeden that he was taken a photography class, in which he was working on a lingerie project. He had Peeden model lingerie for him. During the course of his relationship with Peeden, Ilac provided her with wine coolers, and took indecent liberties with her. Unbeknownst to her, Ilac videotaped much of their sexual activity. These videotapes were received in evidence during the sexual predator hearing, and are part of the record on appeal. We have reviewed these tapes, as well as the pre-sentence investigation report and forensic evaluation, both of which were received in evidence. It appears from one of the tapes that Ilac had sexual intercourse with Peeden while she was in an alcohol-induced state of unconsciousness.
Ilac had sexual intercourse with Peeden on numerous occasions, and their sexual activity sometimes lasted for hours. Ilac also had Peeden perform fellatio upon him. Peeden was apparently aware of the videotape camera, but Ilac assured her that he was not taping them, that he merely wanted to be able to watch their activity in a monitor, during the activity.
In some of the earlier videotaped encounters, Peeden exhibited substantial reluctance to engage in sexual activity, but Ilac persuaded her to let him massage her, and also to drink wine coolers. While Peeden was under the influence of alcohol, even to the point of unconsciousness on at least one occasion, Ilac had sexual intercourse with her, and videotaped it.
During this period, Ilac provided Peeden with money, clothes, and gifts of various kinds. He also gave Peeden's mother gifts. Because Peeden's financial situation was poor, these gifts made an impression upon his victim.
At some point during the relationship, Peeden was resisting Ilac's demands, when Ilac confronted her with photographs of her, in the nude, which he threatened to disclose to her high school, and to other high schools in the area. Ilac also threatened to disclose to her mother that she had been having sex with him. Ilac obtained Peeden's signature on various "promissary [sic] agreement and arrangement" documents, in which Peeden agreed to have sex with him on a regular basis. Peeden claims that her signature was forged on at least one of these documents.
In January, 1998, following a heated telephone argument between Ilac and Peeden, which Peeden's mother overheard on Peeden's end, Peeden disclosed to her mother the existence of a sexual relationship. The authorities were contacted, and a warrant was obtained to search Ilac's home. The videotapes, calendars, and a video listing were obtained. These are all in evidence in the record before us. The video listing is significant because it tends to corroborate the State's suggestion that Ilac may have been planning to use the videotapes for other than his own amusement. One entry, for example is as follows:
179705 — 1st nude uninebriated
foreplay/orgasm
excellent body shot on videotape.
Other examples include:
 159706 — Uninebriated — green bra Amber: oral sex etc. Excellent intercourse video. 219706 — Uninebriated — white bra Amber: oral sex Foreplays penis intercourse Good oral sex video by Amber
(Strikeout in original.)
229706 — Amber: Foreplays wine
Oral sex — penis
 69 — OUCH! Intercourse Very good video . . . Lots of oral sex by Amber 
Intercourse
Ilac was originally charged with eight counts of Rape, alleging that he did engage in sexual conduct with another whose ability to resist or consent was substantially impaired because of a mental or physical condition, and with seven counts of the Illegal Use of a Minor in Nudity — Oriented Material. Ilac ultimately pled guilty to five counts of the Illegal Use of a Minor in Nudity — Oriented Material. The Rape charges were dismissed.
The trial court ordered a psychiatric evaluation and a pre-sentence investigation. On October 23, 1998, the trial court held a hearing on Ilac's classification as a Sexual Predator at which two witnesses testified, Wayne Gilkison of the Montgomery County Adult Probation Department, and Barbra Bergman, the psychologist who performed the psychological evaluation on Ilac. Following the hearing, the trial court found Ilac to be a Sexual Predator. Thereafter, the trial court immediately conducted a sentencing hearing, following which the trial court imposed five concurrent sentences of eight years imprisonment each.
Ilac appeals from his classification as a Sexual Predator.
 II
Ilac's First Assignment of Error is as follows:
 OHIO'S SEXUAL PREDATOR STATUTE IS VOID FOR VAGUENESS AND THEREFORE IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS.
Ilac acknowledges that we have previously rejected an argument that the Sexual Predator classification statute, R.C.2950.09, is unconstitutionally vague in State v. Fortman (March 27, 1998), Montgomery App. No. 16565, 16569, unreported. Ilac argues that we should reconsider our holding in Fortman, in view of the testimony of the State's witnesses, in the case before us, that neither of them were able to predict whether any sexual offender will re-offend.
In making this argument, Ilac understands that a Sexual Predator is "a person who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexual oriented offenses." R.C.2950.01(E). We continue to adhere to our view that this is not a vague definition. The determination whether a given individual is likely to engage in the future in one or more sexually oriented offenses may be difficult. The witnesses in the case before us candidly acknowledged that they could not predict, with any degree of certainty, whether a sexually oriented offender will re-offend. Nevertheless, the General Assembly has prescribed for trial judges the task of determining whether a sexually oriented offender is likely to engage in the future in one or more sexually oriented offenses. That task, while difficult, is not vague, nor is it difficult to comprehend.
We see no reason to depart from our holding in State v.Fortman, supra. Ilac's First Assignment of Error is overruled.
 III
Ilac's Second Assignment of Error is as follows:
 THE LOWER COURT ERRED IN DETERMINING APPELLANT TO BE A SEXUAL PREDATOR PURSUANT TO SECTION 2950.09 OF THE OHIO REVISED CODE.
Although the General Assembly, in R.C. 2950.09(B)(2), has prescribed certain factors that a trial judge must consider in determining whether an offender is a sexual predator, the task of the trial judge, in making that determination, while difficult, is simply defined. The trial court is to determine whether it is likely that the sexually oriented offender will engage in the future in one or more sexually oriented offenses. R.C. 2950.01(E). If the offender is likely to engage in the future in one or more sexually oriented offenses, then he is a sexual predator; if not, he is not.
From our review of the evidence in the record, we conclude that the trial court's determination that Ilac is a sexual predator is not against the manifest weight of the evidence. Ilac's offenses were not casually committed. He engaged in an organized campaign to overcome his victim's resistance and to establish sexual dominion over her. His videotaping of their sexual activity was meticulous. His camera work cannot be faulted. If his videotape listings were not intended to facilitate the commercial exploitation of his handiwork, they at least served the purpose of facilitating his continuing enjoyment by himself being able to watch selected portions of the tapes at any time. This degree of organization suggests an obsession that Ilac will probably have difficulty overcoming.
Dr. Bergman, who conducted Ilac's psychological evaluation, found that he was not a good candidate to obtain effective therapeutic assistance, because he has a tendency to minimize, or deny, the existence of a problem. He has a tendency to see himself as a victim of his fifteen-year old sexual partner (she was fourteen when the relationship began), when the evidence clearly belies that view. When Bergman told Ilac that he would need substantial help to deal with this problem, he became hostile, opining that his renewed faith in God would be all that would be needed.
Based upon our review of the evidence in this record, we agree with the trial court's conclusion that Ilac is likely to engage in the future in one or more sexually oriented offenses. We certainly cannot say that the trial court's finding is against the manifest weight of the evidence.
Ilac's Second Assignment of Error is overruled.
 IV
Both of Ilac's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.
Copies mailed to:
Johnna M. Shia
L. Patrick Mulligan
Hon. David Gowdown